TurNEY, J.,
delivered the opinion of the Court.
The decree of the Chancellor is reversed.
Jemima Carr died in Wilson county in 1857, after having made a last will, in which occurs a provision in these words:
“I direct that my executor sell my two slaves,' Amanda and Alexander, which he may do at private *478 sale, in order to secure for them good masters. I prefer that they should select their masters, provided they select men that will buy them at a fair price. The proceeds of said slaves, and the money I have at interest, I give to Dabney Carr, in trust, for the use and benefit of my said daughter, (referring to Martha Johnson,) and her children, during the life of said daughter, Martha Johnson, above named.
“In the execution of this trust, he will give my said daughter one-half of the interest, annually, for her sole use, and use the other half in paying for the schooling and other necessary expenses of her children, during the natural life of said Martha Johnson; and at her death, the whole of said fund is to be equally divided between her children then living, unless some of said children should die during her life time, leaving . children of their own. In that event, such child or children shall represent the parent in said division,”
Dabney Carr was appointed executor of the will, and qualified and gave bond at the October Term, 1857, of the County Court for Wilson County.
This bill is filed to have the administrator of the estate of Dabney Carr, and his securities upon his executor’s bond, account for whatever of the estate of Je-mima Carr came to his hands, or ought to have come to his hands, under the will.
It is insisted for the defendants, that Dabney had made his final settlement as executor, and had assumed to control the fund as trustee, and the loss by him or on his account, if any, occurred while he was acting as *479 trustee, and after he had settled and ceased to act as executor; therefore, the securities upon the bond as executor are not liable for the devastavit.
Whether he was acting in the one capacity or the other, when he appropriated or misapplied the fund, can make no difference in' this particular case, as section 18 ,of the Act of the 26th of January, 1838, which was, at 'the time of the execution of the bond, in force, provided: “That all executors hereafter qualified, and their securities, shall be liable upon their bonds for the performance of all the trusts of the will which they are required to perform, and all duties devolving upon them as executors, as well in relation to the- real as personal estate; and, in like manner, administrators hereafter appointed, and their securities, shall be liable upon their bonds for the performance of all the trusts and duties of their respective offices, as well in relation to real as personal estates; and such bonds, when taken in the forms heretofore prescribed, shall bind such executors and administrators, as herein provided.” Nicholson’s Supplement, 181.
This statute is broad, comprehensive and explicit, leaving no place for the escape of the securities under the defense made in their answer and argument.[1]
By the. bill, we are asked - to construe the will. The provision is so plain we can see no course for the trustee to pursue, other than to keep the money at interest, upon safe and ■ prompt security, collect the interest annu *480 ally, and apply it as directed. There is no authority for its investment in real estate, as prayed for.
A report of the Clerk and Master shows the amount of -money for which Dabney Carr and his sureties must account. A decree therefor will be entered here.
On the 25th of February, 1871, a petition for rehearing was refused in this cause, and reference made to Porter v. Moores, decided on that day.

 See Porter v. Moores, February 25, 1871, post—.